UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LUKE THIBODEAUX, INDIVIDUALLY
AND ON BEHALF OF HIS MINOR
CHILD ALEXANDRA THIBODEAUX,
ET AL.

CIVIL ACTION

VERSUS

NO. 16-158-JWD-EWD

GEICO ADVANTAGE INSURANCE
COMPANY, ET AL.

**RULING AND ORDER**

This matter comes before the Court on the *Motion for Summary Judgment* (Doc. 45) filed by Defendants GEICO Advantage Insurance Company ("GEICO") and Larry Hiner ("Hiner") (collectively, "Defendants"). Plaintiffs Luke Thibodeaux ("Luke") and Morgan Thibodeaux ("Morgan"), individually and on behalf of their minor child Alexandra Thibodeaux ("Alexandra") (collectively, "Thibodeauxs" or "Plaintiffs") oppose the motion. (Doc. 52.) Defendants filed a reply. (Doc. 54.) Oral argument is not necessary. The Court has carefully considered the law, facts in the record, arguments and submissions of the parties, and is prepared to rule. For the following reasons, the Defendants' motion is denied.

**I.  Background**

This case arises out of a two-car accident occurring on February, 13, 2015, around 11:30 a.m., on Bluebonnet Boulevard northbound in Baton Rouge, Louisiana. (Doc. 1-2 at 3.) The Thibodeauxs' vehicle—a 2001 Volkswagen Passat—was the lead vehicle, and Hiner's vehicle—a 2000 Chrysler Town and Country—was the rear vehicle. (Doc. 1-2 at 3–4.)

Plaintiffs allege that the Hiner vehicle failed to slow down and crashed into the rear of the stationary Thibodeaux vehicle. (Doc. 1-2 at 4.) As a result, Plaintiffs claims that the Hiner vehicle

caused a "violent collision" between the two vehicles, resulting in injuries to Plaintiffs. (*Id.*) Plaintiffs contend that the accident was the result of Hiner's negligent driving. (Doc. 1-2 at 6.) Plaintiff further claims that Hinkle possessed a GEICO Advantage Insurance Company liability insurance policy on his vehicle, which was in full force and effect at the time of the accident. (*Id.*) Consequently, Plaintiffs claim they suffered physical injury and economic harm, for which Hiner and his insurance company should be held liable. (Doc. 1-2 at 4–6.)

In the instant motion, Defendants seek summary judgment on Plaintiffs' claims against them. (Doc. 45 at 1.) Defendants assert that the sole cause of the accident was an unanticipated brake failure in Hinkle's vehicle and that Louisiana's "sudden emergency" doctrine should rebut the presumption that Defendants are liable for the accident due to "latent defects" in Hiner's vehicle.[1] (Doc. 45-11 at 15, 12–13.) Plaintiffs contend that there are genuine issues of material fact as to whether Hiner's vehicle met the latent defect standard, and therefore, whether the sudden emergency doctrine applies in this case. (Doc. 52 at 3–4.)

## II. Discussion

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574,

---

[1] The Court notes that the sudden emergency doctrine and the latent defect doctrine are two separate, but related, negligence defenses. *See, e.g.*, *Augello v. Call*, 210 So. 2d 129, 132 (La. App. 4 Cir. 1968); *Buswell v. Mo. Pac. Transp. Co.*, 184 So. 399, 402 (La. App. 1 Cir. 1938). However, in this case, Defendant asserts the sudden emergency doctrine as if it is one and the same as the latent defect defense. (*See* Doc. 45-11 at 12–13.)

2

586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### B. Applicable Law

#### 1. Negligence Generally

"To recover under Louisiana's negligence law, a plaintiff must establish the following: '(1) [t]he conduct in question was a cause in fact of the resultant harm; (2) [t]he defendant owed a duty to plaintiff; (3) [t]he duty owed was breached; and (4) [t]he risk or harm caused was within the scope of the breached duty.' " *Moore v. Progressive Sec. Ins. Co.*, 2013 WL 2617274, at *2 (M.D. La. Apr. 3, 2013) (quoting *Spott v. Otis Elevator Co.*, 601 So. 2d 1355, 1361–62 (La. 1992)). Of specific relevance to this case, Louisiana Revised Statutes § 32:81(A) provides: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway."

"Louisiana courts have uniformly held that a following motorist in a rear-end collision is presumed to have breached the standard of conduct prescribed in La. R.S. § 32:81 and thus is presumed negligent." *Domingo v. State Farm Mut. Auto. Ins. Co.*, 54 So. 3d 74, 80 (La. App. 5

3

Cir. 2010) (citing *Mart v. Hill*, 505 So. 2d 1120, 1123 (La. 1987)). "To rebut the presumption of fault, a following motorist must establish that she had her vehicle under control, closely observed the lead vehicle, and followed at a safe distance under the circumstances." *Moore*, 2013 WL 2617274, at *2 (quoting *Lailhengue v. United States*, 2011 WL 5417118, at *3 (E.D. La. Nov. 9, 2011)) (citing *Phipps v. Allstate Ins. Co.*, 924 So. 2d 1081, 1084 (La. App. 5 Cir. 2006)). "The presumption of negligence is on the following driver and he bears the burden of exonerating himself." *Domingo*, 54 So. 3d at 80.

## 2. Sudden Emergency Doctrine

In this case, Defendants assert the sudden emergency doctrine to rebut the presumption of Hiner's negligence. (Doc. 45-11 at 15.) Under the sudden emergency doctrine, "[o]ne who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence." *Hickman v. S. Pac. Transp. Co.*, 262 So. 2d 385, 389 (La. 1972); *Snodgrass v. Centanni*, 87 So. 2d 127, 131 (La. 1956). Under such circumstances, Louisiana law does not require a driver to exercise as much "control or the same degree of care and caution as is required of a person who has ample opportunity for the full exercise of judgment and reason." *Dane v. Canal Ins. Co.*, 126 So. 2d 355, 358–59 (La. 1960) (citing *Commercial Standard Ins. Co. v. Johnson*, 82 So. 2d 8 (La. 1955)).

In *Iglinsky v. Player*, this Court evaluated the applicability of the sudden emergency doctrine at the summary-judgment stage. 2010 WL 4905984 (M.D. La. Nov. 24, 2010). In that

case, the Court cited favorably to the following language from the Louisiana state court case *Manno v. Gutierrez*:

> We note first that the application of the sudden emergency doctrine requires factual determinations concerning whether the driver was confronted with imminent peril and whether there was sufficient time to consider and weigh the circumstances in order to take action to avoid an impending danger. While we cannot say that it would never be possible to apply the doctrine on a motion for summary judgment . . . by the nature of the sudden emergency doctrine, it would seem rarely appropriate on a motion for summary judgment.

2010 WL 4905984, at *6 (citing *Manno*, 934 So. 2d 112, 118 (La. App. 1 Cir. 2006)). Thereafter, the Court did note that other Louisiana state appellate circuits had granted summary judgment based on the sudden emergency doctrine. *Id.* Nevertheless, the Court ruled that it could not find that the existence of an emergency situation was undisputed at the summary judgment stage, and thus, could not grant summary judgment based on the sudden emergency doctrine. *Id.*

### 3. Latent Defect Doctrine

Defendants further contend that a latent defect in Hiner's vehicle caused the accident. "A driver generally is not held to be responsible for latent defects in his vehicle, if he has exercised reasonable care in having the car inspected and as a reasonable man he had no prior notice of a defective condition." *Cartwright v. Firemen's Ins. Co. of Newark, N.J.*, 213 So. 2d 154, 155 (La. App. 3 Cir. 1969), *aff'd*, 223 So. 2d 822 (La. 1969); *see also Delahoussaye v. State Farm Mut. Auto. Ins. Co.*, 202 So. 2d 287, 289 (La. App. 4 Cir. 1967). Latent defects may only constitute a valid defense when the proof is "exceptionally strong so as to satisfy certain jurisprudential requirements." *Arceneaux v. Domingue*, 365 So. 2d 1330, 1334 (La. 1978).

"In order for latent defects to constitute a valid defense, the proof must be strong enough to exclude any other reasonable hypothesis as to the cause of the accident except that it resulted from the alleged defects." *Arceneaux*, 365 So. 2d at 1334–35. Further, the proof "must establish

that the driver was not aware of the defects and that the defects could not reasonably have been discovered and remedied by a proper inspection." *Sentry Ins. Co. v. Thomas*, 360 So. 2d 268, 269 (La. App. 4 Cir. 1978). However, "the failure of a motorist to use his emergency brake constitutes negligence and a cause of the accident, if there is a reasonable opportunity to do so effectively after the ordinary foot brakes fail." *Arceneaux*, 365 So. 2d at 1334 (quoting *Cartwright*, 213 So. 2d at 155).

### C. Analysis

The Court presently finds that there are genuine issues of material fact regarding whether the sudden emergency and latent defect doctrines apply so as to relieve Defendants of liability. Based on the parties' submissions to the Court, the following present issues of material fact in the case at hand:

*(1) Whether Hiner followed the Thibodeaux vehicle too closely immediately before the accident.*

Jesse Rickey Simmons ("Rick"), one of Hiner's passengers, testified that there was approximately 100 to 150 feet between the two vehicles before Hiner crossed an intersection and his brakes allegedly failed. (Doc. 45-4 at 15.) Plaintiffs question whether Hiner followed the Thibodeaux vehicle too closely. (*See* Doc. 52 at 14.) Based on the limited evidence provided to the Court, it is unclear whether Hiner followed the Thibodeaux vehicle too closely at the time of the accident, which could indicate negligence on Hiner's part.

*(2) Whether Hiner drove too quickly through the intersection at the time of the collision.*

Hiner testified that he was driving very slowly—possibly around five miles an hour—at the time of the accident, although he also admitted that he was not paying close attention to his speed just before the accident. (*See* Doc. 52-2 at 5.) Hiner claimed he was not accelerating at the

moment of the accident, but only part of the way through preceding intersection. (*Id.*) Rick testified that Hiner accelerated until he reached a "hill" in the intersection, before attempting to slow down. (Doc. 45-4 at 16.) Similarly, Jeannette Hiner ("Jeannette"), Hiner's wife and passenger, testified that the vehicle was moving at "no more than five miles per hour." (Doc. 45-6 at 8.) Leslie Simmons ("Leslie"), another of Hiner's passengers and Rick's wife, also testified that the car proceeded through the intersection at about five miles per hour. (Doc. 45-5 at 8.) Rick, however, testified that the car was only moving at three miles an hour. (Doc. 45-4 at 6.)

Although Hiner testified that the force of the collision stopped his vehicle, (Doc. 52-2 at 6), the airbags did not deploy, (*id.*; *see also* Doc. 45-4 at 7). Luke testified that the impact from the collision was very hard, that his head "slammed" back into the headrest, and that he felt a pain in his side, allegedly resulting in a lumbar spine herniation. (Doc. 52-3 at 2.) Luke's testimony is not consistent with the speed that Hiner and his passengers claim. Conversely, Hiner indicated that he spoke to the Thibodeauxs and no one complained of any pain. (Doc. 52-2 at 9–10.) Additionally, no one called an ambulance to the scene because the accident was "very minor." (*Id.*) Jeannette similarly claimed that she did not overhear any of the Thibodeauxs complaining of pain or discomfort, nor did she notice, in the limited time that she saw them, that any were injured. (Doc. 45-6 at 12–14.) The Court finds these facts indicative of a dispute over the speed of Hiner's vehicle at the time of the accident, and moreover, a disagreement over whether the accident was the result of Hiner's allegedly negligent driving.

> *(3) Whether Hiner had adequate time to press his emergency brake and thereby avoid the accident.*

Hiner testified that he could have avoided the accident if his brakes had been fully functional. (Doc. 52-2 at 5.) Yet, Hiner also testified that he "didn't even have time to think" about

7

trying his emergency brakes; he also did not apply the emergency brakes after the accident. (Doc. 52-2 at 6.) Although Hiner's passengers testified that Hiner's van crossed the intersection at about five miles an hour, the accident purportedly occurred "immediately and in a matter of split-seconds." (Doc. 45-3 at 1.) These facts could lead a reasonable jury to conclude that Hiner had adequate time to stop his vehicle by applying his emergency brakes.

*(4) Whether and when brake fluid escaped from the brake line of Hiner's vehicle.*

Hiner testified that he did not see any brake fluid on the cement after the parties moved their vehicles to an adjacent parking lot following the accident. (Doc. 52-2 at 8; *see also* at 45-3 at 2.) Hiner claimed that although he did not know if the brake fluid was leaking, he proceeded to walk to an adjacent "auto place" and bought brake fluid. (Doc. 52-2 at 8; Doc. 45-3 at 2.) Rick testified that after Hiner added new brake fluid to his vehicle, the brake fluid "went right on the ground." (Doc. 45-4 at 13; *see also* 45-3 at 2.) Based on this testimony, another issue is whether the brakes failed *before* or *after* the accident, which could lead a reasonable jury to conclude that the cause of the accident was Hiner's negligence.

*(5) Whether Hiner was aware of potential brake issues before the accident.*

Rick testified that the van's brake warning light appeared after the accident, which was why Hiner walked to an adjacent store to purchase brake fluid. (Doc. 45-4 at 12.) Yet, the brake light was allegedly not visible when the Hiners and Simmons departed from a Baton Rouge restaurant, only two minutes prior to the accident. (Doc. 45-4 at 17–18.) Additionally, just before the purported brake failure, the brakes worked properly when Hiner stopped at a traffic light. (Doc. 45-4 at 18.) These facts may indicate that Hiner was aware of a brake issue prior to the accident, which if true, would preclude an application of the sudden emergency doctrine. Alternatively, a

8

reasonable jury could conclude that the cause of the accident was Hiner's negligence and that the brake failure was a result of the accident itself.

Based on a consideration of the evidence in the light most favorable to the Plaintiffs, the Court cannot grant summary judgment for Defendants, as there are still genuine issues of material fact as to what occurred and whether the sudden emergency or latent defect doctrine applies to this situation.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 45) filed by Defendants, GEICO and Hiner, is **DENIED**.

Signed in Baton Rouge, Louisiana, on November 7, 2018.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**